LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
POST OFFICE BOX 20527
PHOENIX, ARIZONA 85036
TELEPHONE: (602) 271-7700
FACSIMILE: (602) 258-7785
Donald Wilson, Jr./Bar No. 005205
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| U-Haul International, Inc., a Nevada corporation; e-Move, Inc., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Hire a Helper, LLC, a California limited liability company; Michael Glanz and Amy Glanz, husband and wife; John and Jane Does I - X; ABC Partnerships I – X; XYZ Corporations I – X,<br><br>Defendants. | PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION ORDER WITH NOTICE<br><br>**(ORAL ARGUMENT REQUESTED)** |

Plaintiffs move for a preliminary injunction, pursuant to Rule 65(a), Federal Rules of Civil Procedure (F.R.C.P.). Plaintiffs seek to enjoin Defendants from using, reproducing and/or distributing the trade names, trade dress and service marks owned and/or exclusively licensed by Plaintiffs, whether registered or not, including but not limited to the names and marks "Moving Help®" and "Moving Helper®", in conjunction with the sale and advertising of Defendants' products and services. 15 U.S.C. §1125 *et. seq.*; 15 U.S.C. §1116.

Plaintiffs further request that Defendants be enjoined from copying, reproducing, distributing, publicly displaying or otherwise infringing or contributing to the infringement of Plaintiffs' copyright work including the creation of derivative works.

Plaintiffs' copyright work is located on the Web at http://movinghelp.emove.com and/or www.emove.com. Defendants' infringing work is located on the Web at www.hireahelper.com.   17 U.S.C. §106; 17 U.S.C. §502(a).

This Motion is supported by the attached Memorandum of Points and Authorities, separately filed Statement of Facts and all exhibits thereto, including any records submitted under seal pursuant to order of this Court.

RESPECTFULLY SUBMITTED this 10th day of July, 2008.

BROENING OBERG WOODS & WILSON, P.C.


By     **s/s Donald Wilson, Jr.**
Donald Wilson, Jr.
P. O. Box 20527
Phoenix, Arizona  85036
Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES

I.  INTRODUCTION

As thieves often do, Defendant Michael Glanz came cloaked in the dark of night. Over a period of five months, under the guise of participating in a commercial venture, Glanz gained entry to both the public and non-public portions of Plaintiff eMove's "Moving Helper® MarketPlace" website.  He pilfered the thoughts, work, ideas, concepts and expressions developed by eMove over a period of more than five years.  He then incorporated his own business and, utilizing the protected marks and misappropriated work of eMove, began advertising and marketing services over the Web.  Defendants have knowingly stolen the industry of others and should be immediately enjoined.

II.  SUMMARY OF FACTS RELEVANT TO APPLICATION FOR INJUNCTION

Plaintiff eMove pioneered the concept of on an online marketplace for connecting consumers seeking moving assistance with independent contractors who provide such

service. SOF ¶11.  eMove's online marketplace is commonly known as the "Moving Help® MarketPlace" and is located at www.emove.com. Id.

U-Haul International owns and has granted eMove the exclusive right to use the registered trademarks "Moving Help®" and "Moving Helper®". SOF ¶ 8; Complaint, ¶s 10-12. These trademarks were first used in commerce beginning in 2002 and 2004 respectively. After years of creating, developing and designing its online marketplace, eMove went live on the Web with "Moving Help®" and the "Moving Help® Marketplace" in the format relevant to this Application on January 1, 2004. A subsequent updated version was created, published and fixed in copy August 2005. SOF ¶8, 22.

In 2006 and 2007, Defendant Glanz stole eMove's trademarks, trade secrets, copyrighted works, and service concept and incorporated Defendant Hire a Helper, L.L.C. to make its own directly competing marketplace. Defendants located their rip-off marketplace at http://www.hireahelper.com.  SOF ¶6.  To create this competing website, Defendants used Plaintiffs' valuable service marks and copied Plaintiffs' copyrighted website. Glanz has also violated trade secret laws and breached his contract[1] with eMove by misappropriating such trade secrets and other proprietary information for himself and for Defendant Hire a Helper.

All acts of copying and unfair practices by Defendants occurred subsequent to Plaintiffs' ownership, license and/or use or registration of such marks and copyright works. SOF ¶8, 22.

III.    STATEMENT OF LAW

This Court has the authority to issue a preliminary injunction pursuant to 15 USCA § 1116 *et seq* (the Lanham Act), § 502(a) Copyright Act, A.R.S. §44-401 *et. seq.*,

---

[1] Defendant Glanz also breached his contract with Plaintiff eMove as alleged in Plaintiffs' Complaint, Count Three, ¶¶ 41-48.

contract, common law and Rule 65, F.R.C.P.

A preliminary injunction requires proof the movant is likely to succeed on the merits of the case and that the movant will suffer irreparable harm if an injunction is not issued. *GOTO.COM v. Walt Disney Company*, 202 F.3d 1199, 1204 (C.A.9 2000).

### A. PLAINTIFFS HAVE A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

#### 1. TRADEMARK – LANHAM ACT

Defendants have used Plaintiffs' valuable and federally registered "Moving Help®" and "Moving Helper®" trademarks throughout their hireahelper website to market their directly competing services, in violation of federal trademark law.

15 USCA § 1125(a) in the Lanham Act provides for civil liability against one who infringes upon another's trade mark: "[A]ny person who, in connection with any goods or services, uses in commerce any word, term, name, symbol. . . or any combination thereof . . . which is likely to cause confusion, or to cause mistake."

To establish infringement, a registered trademark holder must show it is (1) the owner of a valid, protectable mark and (2) the infringer is using a confusingly similar mark. *Grocery Outlet, Inc. v Albertson's Inc*, 497 F.3d 949 (C.A.9 (Cal.) 2007).[2] In order to establish entitlement to a preliminary injunction in a trademark case, a plaintiff must show either: (1) a combination of probable success on the merits and the possibility of irreparable injury, *or* (2) the existence of serious questions going to the merits and that the balance of hardships favor plaintiff. *GOTO.COM v. Walt Disney Company*, 202 F.3d 1199, 1204 (C.A.9 2000). Plaintiff is entitled to a preliminary injunction in a trademark case under the Lanham Act if it can show that the defendant is using a mark confusingly similar to that of the plaintiff and that plaintiff's use of that

---

[2] The same standards for liability apply to both registered and unregistered marks and trade dress. *Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999); *U-Haul International, Inc. v. Jartran, Inc.,* 793 F.2d 1034, 1042 (C.A. 9th Cir. Ariz. 1986).

- 4 -

mark pre-dates use by the defendant. 202 F.3d at 1205.

        (a)    <u>Likelihood of Confusion</u>

Likelihood of confusion is shown if the similarity of the marks is likely to confuse customers about the source of the product or service. *GOTO.COM v. Walt Disney Company*, infra. The seminal case in the analysis of the establishment of confusion is *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir. 1979) which names eight factors in determining the likelihood of confusion. [3] These elements have been referred to as the *Sleekcraft* factors. *Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999). The *Sleekcraft* factors need not be established to the same degree in each instance, nor must all factors exist. Rather, the test has been described as a "pliant" one in which some factors are more important than others and in some instances some of the factors do not apply. *Brookfield Communications Inc., supra,* 1054. The relative importance of each factor is case specific and likelihood of confusion can be established after considering only a subset of the factors. Id.

        (b) <u>Likelihood of Confusion in the Context of the Web</u>

In the specific context of the Web, it has been held that the three most important factors for a finding of trademark infringement are (1) similarity of the marks, (2) relatedness of the goods or services and (3) the simultaneous use of the Web as a marketing tool. *Brookfield Communications Inc. v. West Coast Entertainment Corp.*, infra. [4]

        (i)    <u>Similarity of the Marks</u>

The first single most important element in this claim is similarity of the marks. *GOTO.COM v. Walt Disney,* infra. The greater the similarity of the marks, the greater the

---

[3] (1) Similarity of the marks; (2) Relatedness of the two companies' services; (3) Marketing channel used; (4) Strength of the Plaintiff's mark; (5) Defendant's intent in selecting its mark; (6) Evidence of actual confusion; (7) Likelihood of expansion into other markets; (8) Degree of care likely to be exercised by purchasers. *Sleekcraft, supra* at 348-349.

[4] Nevertheless, where applicable to this application, reference to other *Sleekcraft* factors will be discussed.

likelihood of confusion. Id.  Here, the trademarks are not just similar – they are identical. In *Brookfield,* the trademark at issue was "MovieBuff." The court of appeals found that the infringing name "moviebuffonline.com" was essentially identical to the plaintiff's trademark name and enjoined the infringing use.[5] Id at 1055.  See also *Public Serv. Co. v. Nexus Energy Software, Inc*., 36 F.Supp2nd 436, (DMass 1999)("energyplace.com" and "Energy Place" are virtually identical and confusing); *Minnesota Mining & Mfg. Co. v. Taylor*, 21 F.Supp.2d 1003, 1005 (D. Minn. 1998) ("Post-it.com" and "Post-It" are the same).  Here, Plaintiffs own and/or are the exclusive licensees of the marks "Moving Help®" and "Moving Helper®".  SOF ¶8, 22.  Defendants use the terms "Moving Help" and "Moving Helper" throughout their website.  See for example, http://www.hireahelper.com/ Moving Help® link Services: Moving Help®; http:www.hireahelper.com/learn Hire a Helper, Moving Help® link, SOF ¶12-25.  These marks are identical, cause confusion and infringe upon Plaintiffs' protected service marks.[6]

(ii)     Relatedness of the Goods or Services

The second factor in determining confusion is whether the goods or services are "related".  Related goods are generally more likely to confuse the public as to the producers of the goods than are unrelated goods or services.  *Brookfield, supra. See also Official Airline Guides, supra*.   Therefore, if the marks are identical or virtually identical, combined with identical products or services, the likelihood of confusion follows "as a matter of course." *Brookfield, supra* at 1056.  Here, eMove's "Moving Help® site functions as an online marketplace for connection between persons who wish

---

[5] In concluding that the names were confusingly similar, the court of appeals stated ". . .many Web users are likely to associate "moviebuff.com" with the trademark "MovieBuff", thinking that it is operated by the company that makes "MovieBuff" products and services."  Brookfield, supra, at 1034.

[6] Defendants have also infringed on Plaintiffs' trade dress.  The legal standard for trade dress infringement is whether the "total image" of the product or work is similar.  *Brighton Collectibles, Inc. v. Rennaissance Group Inter.,* 239 Fed. Appx. 333 (CA 9th 2007*); Mattell, Inc. v. Walking Mountain Products,* 353 F.3d 792, 808 n. 13 (9th Cir. 2003*).*  Here the work infringed upon is the "total image" that comprises eMove's website.

- 6 -

to act as service providers or "Moving Helpers®" and customers. SOF ¶11. Defendant Hire a Helper's site at http:www.hireahelper.com "Moving Help" link offers exactly the same service. SOF ¶15. The services are clearly of a direct, competitive nature and are therefore "related", weighing heavily in the likelihood of confusion.

### (iii) Use of the Web as the Common Marketing Tool

*"The Web is a Very Different World"*
*- Goto.com v. Disney, supra,* at 1206.

The third element utilized to consider the likelihood of confusion is the marketing tool used by the parties. Use of the Web as a marketing or advertising tool exacerbates the likelihood of confusion.[7] *Brookfield, supra*. A website user on different sites would "almost certainly" assume a common sponsorship if the sites' trademarks are the same. Id. The Web as a marketing channel is susceptible to the likelihood of confusion since it allows competing marks to be encountered at the same time on the same screen. Id. at 1207. In *Brookfield*, the court concluded that given the similarity of plaintiff's trademark with defendant's name, the relatedness of the products and services that accompany those marks, combined with use of the Web as a marketing and advertising tool, "many forms of consumer confusion are likely to result." *Brookfield, supra* at 1057. This is particularly true where, for example, a consumer looking for Plaintiff eMove's "Moving Help® MarketPlace, enters the words "Moving Help®" or "Moving Helper®." Search engines would recognize those words and pull up Defendant's website, causing actual and/or initial confusion.[8] (See also Section (c) "Initial Interest" Confusion, Infra).

### (iv) The Other *Sleekcraft* Factors

There are other *Sleekcraft* Factors that the Court may consider in determining the

---

[7] Even products or services that are not identical are capable of being confused by the public when marketed through the internet. *Goto.com, supra* at 1206.
[8] Reaching a competitor's website because of use of the owner's marks has also been held to be a misappropriation of Plaintiffs' goodwill and is independently actionable. *GOTO.COM, supra.*

likelihood of success on the merits, including the strength of the Plaintiffs' mark, the Defendants' intent in selecting its mark, evidence of actual confusion, the likelihood of expansion into other markets and the degree of care likely to be exercised by purchasers in determining the true source of the goods or services. *GOTO.com v. Walt Disney, supra*, 202 F.3d 1199, 1205. For purposes of this Application, the following elements may be considered by this Court.

### (aa) Strength of Plaintiffs' Marks

It is the mark in its entirety that must be considered here and not simply any individual element of the mark. *GOTO.COM, supra*. In *Brookfield,* the court found that whether a mark is weak or not is of "little importance" where the infringing mark is identical and the goods or services are closely related. Id. at 1059. In this case, Defendants' use of Plaintiffs' marks "Moving Help®" and "Moving Helper®" *and* the services provided by both are identical. Moreover, as will be discussed later, use of Plaintiffs' marks in Defendants' metatags or HTML code is also evidence of the strength of Plaintiffs' marks because use of those marks allow search engines to identify Defendants' website to potential consumers. This is unfair practice that has caused and will continue to cause harm to eMove if Defendants are not enjoined. *Id.*

### (bb) Defendants' Intent in Selecting its Mark

It is well settled that if an infringer adopts his designations or marks with the intent of deriving benefit from the reputation of the trademark, such intent may be sufficient to justify the inference that there are confusing similarities.[9] *Brookfield* at 1059, citing to *Pacific Telesis v. International Telesis Comms.,* 994 F.2d 1364, 1369 (9th Cir. 1993) and quoting *Restatement of Torts*, Sec. 729, Comment Clause (b)(f) (1938).

---

[9] Additional evidence of intent includes Defendant Hire a Helper's "purchase" of certain key words at Google that identify Hire a Helper's website when the name "eMove" is entered and Defendant Michael Glanz' blog two months before going live with www.hireahelper.com, citing eMove's website design as one that should be emulated.   SOF ¶29.

- 8 -

The intent factor favors plaintiff in establishing likelihood of success on the merits where the infringer has adopted a mark with actual or constructive knowledge that it was the mark of another. *Brookfield* at 1059.  See also *Official Airline Guides*, 6 F.3d at 1394 (Knowing adoption of another's work or mark raises the presumption of intent to deceive the public.)  In the context of the Internet, intentional registration of a domain name, knowing that the second level domain belongs to a competitor, weighs in favor of the likelihood of confusion. Id.[10]    In this case, Defendant Michael Glanz was a "Moving Helper®" between July 21, 2005 and December 16, 2005. SOF ¶1.  He accessed Plaintiff eMove's website on numerous times and over this five month period,  Glanz was contacted through the Moving Help® Market Place for at least 27 jobs.  He declined 23 and accepted four.  Of the four that were accepted by him, he completed one.[11]  SOF ¶3. He had actual and constructive knowledge that the marks "Moving Help®" and "Moving Helper®" were owned, registered and/or exclusively licensed by Plaintiffs. (See marks and copyright designations in use between July 21, 2005 and December 16, 2005 in the printed version of www.emove.com., Exh. E to SOF.)  His intent in the use of the marks is clear and unmistakable.  The inference of confusion is established as a matter of law.

Although constructive knowledge of Plaintiffs' marks is sufficient intent to establish likelihood of success on the merits, it is also significant to note that two months prior to going live with www.hireahelper.com, Glanz publicly commented on the desirability of the eMove website design, selecting eMove as one of his top three design choices.     (See    http://blog.hireahelper.com/2007/05/05/how-bad-design-increases-business/ and print out attached to SOF as Exhibit D).

---

[10] Note, however, that intent to confuse consumers is not a required element of trademark infringement. *Dreamwerks*, 142 F.3d at 1132, n. 12:  "Absence of malice is not a defense to trademark infringement." Nevertheless it is relevant to the inquiry of the likelihood of confusion or to the extent the court elects to consider it as a matter of equity.  *Brookfield*, *supra*.

[11] Low job acceptances and/or performance is a flag that the individual who signed up as a Moving Helper® is using the eMove Moving Help® Market Place for reasons other than procuring work.

- 9 -

(cc) <u>Degree of Care Likely to be Exercised by the Purchaser</u>

The likelihood of confusion is also analyzed in the context of the discerning or reasonably prudent purchaser or consumer. *Brookfield* citing *Dreamwerks*, 142 F.3d at 1129. A reasonable consumer is expected to be more discerning and less easily confused when purchasing expensive items or when the products or services sold are marketed primarily to buyers with expertise. *Brookfield, supra.* However, confusion is more likely when dealing with inexpensive products or services because the customer is likely to exercise less care in determining the true identity of the mark or the source of the product or service. *Brookfield* at 1060. Defendants cannot deny that their services are marketed and sold to all consumers, including the least sophisticated consumers. Id.

(c) <u>Likelihood of "Initial Interest" Confusion</u>

"Initial interest confusion" occurs when Defendants' trademark misuse initially confuses a consumer into believing a connection between the Defendant and the infringed trademark, even though the consumer clearly knows and understands by the time he has made his selection and purchase, that he is purchasing the services of someone other than the trademark holder. Id. Initial interest confusion comes up in the context of the Internet when Defendants use "metatags" to fool search engines into bringing consumers to their websites. A "metatag" is "HTML"[12] code not visible to the general consumer or web users, but which is "buried" in a website and used by search engines to identify sites being sought by the web user. *Brookfield, supra, at 1063-1065.* Because such use causes "initial interest" in the infringing website, federal courts conclude that use of another's trademark in a sites' metatags constitutes trademark

---

[12] "HTML"s is the acronym for Hypertext Markup Language and is used as instructions stored within the database of the computer and not readily readable by the consumer or web user. *Perfect 10, Inc. v. Amazon.com, Inc. et. al.,* 508 F.3d 1145, 1156 – (9th Cir. CA 2007).

- 10 -

infringement. Id.

The rationale behind the viability of this legal theory is that the initial "wrongful" connection may lead to the development of interest in the competitor's line of products or services that the competitor would not have had, had it not otherwise used the plaintiff's mark. Id. *Television Enter. Network, Inc. v. Entertainment Network, Inc.,* 630 F.Supp. 244, 247 (D.N.J. 1986). Therefore, "initial interest confusion" is actionable under the Lanham Act as a trademark infringement. *Brookfield, supra,* 174 F.3d at 1063.

In this case, Defendants are both misappropriating Plaintiffs' goodwill *and* causing consumer confusion by using the protected marks "Moving Help®" and "Moving Helper®" in their metatags and otherwise on the website. The initial "wrongful" connection made to Defendant Hire a Helper's website may lead the consumer to develop an interest in Defendants' line of services, an advantage Defendants would not have had if they had not otherwise used Plaintiffs' marks.

2. COPYRIGHT INFRINGEMENT BY DEFENDANT HIRE A HELPER, AND THE SECONDARY LIABILITY OF DEFENDANT MICHAEL GLANZ

(a) <u>Copyright Infringement by Defendant Hire a Helper, L.L.C.</u>

Defendants have also blatantly copied Plaintiffs' website in violation of Plaintiffs' copyrights. The rights bestowed upon a copyright holder include, *inter alia,* the exclusive right to display, distribute and create derivative works.[13]   17 U.S.C.A. §§103, 106. *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1159, 1161.    In this case, in violation of Plaintiffs' exclusive rights, its work in derivative form is incorporated in concrete and permanent form in Defendants' website at www.hireahelper.com. This is a violation of 17 U.S.C.A. §§102, 103.

To establish copyright infringement, the copyright owner must prove ownership of the copyright and copying of that work by the defendant. *Johnson Controls, Inc. v.*

---

[13] A "derivative work" is defined as work based upon, or adapted from, one or more preexisting protected works. 17 U.S.C.A. §101

*Phoenix Control Systems, Inc.,* 886 F.2d 1173, 1174 (C.A. 9 Ariz. 1989). Plaintiff's copyright registration is *prima facie* evidence of ownership and the trial court may rely upon that registration as *prima facie* evidence of originality of the work. 17 U.S.C.A. §401(c); *Johnson Controls,* infra. See Plaintiffs' Complaint, ¶s 10-12.

Computer software[14] is subject to copyright protection and a computer owner who stores an image as electronic information and serves that electronic information directly to the user is "displaying" the electronic information in violation of the copyright holder's exclusive display rights. *Johnson Controls, supra,* at 1175; *Perfect 10,* infra. The copyright holder's source code and object code are the literal components of the program and have been consistently held to be a protected work. *Johnson Controls, supra* at 1175. The Plaintiffs' structure, sequence, organization, user interface[15] and function are also protected as "expression" of these components or ideas. Id. In this case, Defendants copied Plaintiffs' structure, sequence, organization, user interface and function. SOF ¶11-25. There is no mistaking the identical architecture[16] of Defendants' website when compared to the website of eMove. Id. For example, both sites function as a neutral venue for moving *and* providing moving assistance. SOF ¶11, 15. Entering the Hire a Helper website, copying eMove, the user is given a selection of services, including "moving help." Both sites illustrate the same or similar 1-2-3 stop process ("Search, Connect, Move"/"Search, Contact, Pay".) SOF ¶12, 16. Both sites provide the customer with the names, prices and customer reviews of potential movers. Both sites utilize the same or strikingly similar organization, sequence and structure including links

---

[14] A computer program is made up of several different components, including the source code, object code, structure, sequence and/or organization of the program, the user interface and the function or purpose of the program. *Johnson Controls , supra,* at , 1159, 1161, 1175.

[15] "User interface" is sometimes also referred to as the "look and feel" of the computer program. This term is usually used when talking about the design of the screen and the manner in which the information is presented to the user. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc., infra.*

[16] "Architecture" is the selection, arrangement and coordination of material within a computer program, including its structure, sequence, organization, user interface and function.

- 12 -

to "Moving Help" within both sites and, within Hire a Helper's website, links to "Cleaning Help", Lawn Help", "Frequently Asked Questions", answers. SOF ¶13-14, 17-25. (See also print versions dated 11/16/07 attached as Exhibit F to SOF.)[17]  Indeed, the sites' organization and design are so strikingly similar that once a user has navigated one site, he can predict both the organization and content of the competitor's site.  Id. In this case, Defendants' copyright violations are not just the creation of derivative works – they directly copy specific pages and they directly copy Plaintiffs' website architecture.

The element of copying can be established by circumstantial evidence of access and substantial similarity between the work and the infringer's work. *Johnson Controls, supra* at 1176. In this case, the evidence of access is direct, not simply circumstantial. Defendants had access to Plaintiffs' work both directly through open use of Plaintiffs' program on the web as well as Defendant Glanz' direct access to non-public confidential information and trade secrets when he agreed to act as a "Moving Helper®" with eMove, on July 20, 2005.   Both of these uses were after Plaintiff U-Haul's creation and publication of the website January 1, 2004 and its subsequent updated version in August, 2005.  SOF ¶1-7, 8. Both of these uses were also after eMove's license and exclusive and continuous use of these works.   SOF ¶8, 22. In this case, Defendants' website www.hireahelper.com's structure, sequence, organization, user interface and function created on or about July, 2007, including subsequent modifications and versions, is identical to that of Plaintiff U-Haul's work and is a direct derivative work of Plaintiffs' original works.  SOF ¶8, 11-21. This is a clear, unmistakable copy and infringement of Plaintiffs' protected works and a violation of 17 U.S.C.A. §102, 103.

---

[17] In addition, there are certain proprietary information and trade secrets contained within documents and records that are presently the subject of a motion for order to seal.  See Plaintiffs' Plaintiffs' Motion to Submit Certain Confidential Information and Trade Secrets Under Seal dated July 7, 2008.

(b).  <u>Secondary Liability of Defendant Michael Glanz</u>

Defendant Glanz is secondarily liable for copyright infringement because he contributed to the actual infringement and/or failed to stop Defendant Hire a Helper from its direct infringing activities.  The law recognizes two distinct theories of secondary liability, both of which apply to Defendant Michael Glanz.  Contributory liability has been defined as the defendant's failure to stop his own actions which facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party, such as Defendant Hire a Helper, to stop its directly infringing activities. *Metro Goldwyn Mayer Studios, Inc. v. Grokster,* 545 U.S. 913, 930, 125 S.Ct. 2764; *Perfect 10,* infra.

For contributory liability, one is liable for copyright and trademark infringement because he himself contributes to the infringement by intentionally inducing or encouraging direct infringement.  *Perfect 10,* supra at 1169-70.  Intent is imputed if the actor knows that the consequences are certain or substantially certain to result from his act.  In that case, he is treated as if he had in fact desired or "intended" to produce the result. Id. at 1171.  Therefore, an actor is contributorily liable if he knowingly takes steps that are substantially certain to result in such direct infringement.

Defendant Glanz took information gained from the non-public portions of Plaintiff e-Move's website and used it to create the architecture, style, dress and copy of www.hireahelper.com.  SOF ¶ 4. It can easily be said that the infringing consequences were certain or substantially certain to result and the requisite intent to infringe will be imputed to him as a matter of law. *Perfect 10,* infra.

The second distinct concept of secondary liability is vicarious liability. *Perfect 10, supra* at 1173.  One can be vicariously liable if he has both the legal right and practical ability of  supervising or controlling the direct infringer.  Id.  In this case Defendant Glanz has, and continues to have, the direct and absolute ability to supervise, manage

and/or control Hire a Helper and to control, limit or avoid infringing activity by Defendant Hire a Helper on its website, thus he is vicariously liable for this infringement by Defendant Hire a Helper.

### 3. COMMON LAW STATE CLAIM FOR UNFAIR COMPETITION

Arizona law permits injunctive relief where the evidence shows confusion. *Household Finance Corp. v. Federal Finance Corp.,* 105 F.Supp. 164, 167 (D.C. Ariz. 1952). Id. See also *Kaibab Shop v Desert Son, Inc.,* 135 Ariz. 487, 662 P.2d 452 (Ariz.App. 1983) (injunction properly granted where there was evidence of confusion to the public); *Boice v Stevenson*, 66 Ariz. 308, 187 P.2d 648 (Ariz. 1947) (preliminary injunction granted where name was confusingly similar and parties were doing similar business). Under Arizona Unfair Competition law, the use of Plaintiffs' marks by Defendants causes the ordinary purchaser to be confused as to the source of the services provided, whether such confusion is actual or only of "initial interest" and is, in any event, actionable as unfair competition. *Brookfield, supra,* at 1063. There doesn't need to be an exact likeness; similarity is enough. Such confusion entitles Plaintiffs to injunctive relief under the common law of the State of Arizona. *Kaibab Shop; Household Finance.*

### 4. TRADE SECRETS

Arizona has adopted the Uniform Trade Secrets Act. A.R.S. § 44-401 et. seq. The public policy supporting trade secret law in Arizona has been stated as providing a balance of public interest in competition in the workplace, with the need for commercial ethics. *Enterprise Leasing Company of Phoenix v. Ehmke,* 3 P.3d 1064, 1071 (2000). This both encourages innovation and invention and establishes fair business practices. Id. Plaintiffs' intellectual property and other proprietary information contained in the non-published portions of the "eMove" website, including but not limited to Plaintiffs' knowhow, business methods material, design, architecture, business practices, strategies, marketing information, software technologies, processes, methods and applications,

constitute trade secrets as that term is defined by A.R.S. §44-401(4). Id. These trade secrets afford e-Move a competitive advantage and are valuable to eMove. (SOF ¶28). Reasonable precautions were taken by eMove to safeguard such secrets, including providing limited access to Defendant Glanz to certain proprietary information under specific terms and conditions. (SOF ¶26-28). Plaintiffs' trade secrets were obtained by Defendants by improper means when Glanz accessed the non-public portions of eMove's website and agreed to keep that intellectual property private and confidential. Defendants' use of this information is wrongful and constitutes misappropriation pursuant to A.R.S. §44-401(2) entitling Plaintiffs to injunctive relief.

B. **PLAINTIFFS WILL BE IRREPARABLY HARMED IF DEFENDANTS ARE NOT ENJOINED**

In copyright and trademark infringement cases, showing of a reasonable likelihood of prevailing on the merits raises a presumption of irreparable harm. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.,* infra (copyright); *GOTO.COM v. Walt Disney Company*, infra (trademark infringement).

C. **PUBLIC INTEREST FAVORS THE GRANTING OF AN INJUNCTION**

Public policy proscribing trademark infringement, copyright infringement and other state common law claims have been stated as the balancing of public interest in competition with the need for commercial ethics. *Enterprise Leasing Company of Phoenix v. Ehmke,* 197 Ariz. 144, 3 P.3d 1064, 1071 (2000). See also *Smith v. Montoro,* 648 F.2d 602, 607 (C.A. Cal. 1981)(Infringement is wrongful and against public policy because it involves an attempt to misappropriate or profit from another's talents and workmanship.) This is particularly true where Defendants have acted shamelessly in the outright theft of Plaintiffs' protected intellectual property. Issuing injunctive relief will also promote the strong public policy of encouraging innovation and invention and hold Defendants to the standards established for fair business practice.

**D.     NOMINAL BOND SHOULD BE REQUIRED**

District Courts have wide discretion in ordering a security bond in an amount the court deems proper. Rule 65(c), F.R.C.P., 28 U.S.C.A.  In this case, a nominal bond is justified in the amount of $1,000.

**IV.    CONCLUSION**

There is a high likelihood of success on the merits and Plaintiffs will be irreparably harmed if Defendants are not immediately enjoined.  In trademark and copyright infringement cases, irreparable harm is established upon the showing of a high likelihood of success on the merits. Plaintiffs are the owners and/or exclusive licensees of Moving Help®, Moving Helper® and the Moving Help®MarketPlace. Plaintiffs are also the owners and/or exclusive licensees of copyright work located at this website. Plaintiffs' creation, use and/or registration of its marks and works predates the wrongful use by Defendants. That use is false, misleading and causes confusion as to the origin and/or affiliation of Defendant Hire a Helper's services with those of Plaintiff eMove and/or creates "initial interest" confusion.  Defendant Hire a Helper has also copied and is displaying derivative works belonging exclusively to eMove.  Plaintiffs' marks and works by Defendant Hire a Helper. Plaintiffs' marks and works in the non-public sections of eMove's "Moving Help® MarketPlace" constitute trade secrets under the laws of the State of Arizona.  These trade secrets were wrongfully obtained by Defendant Glanz, communicated by Glanz to Hire a Helper and is a violation of A.R.S. §44-401(2).

RESPECTFULLY SUBMITTED this 10th day of July, 2008.

BROENING OBERG WOODS & WILSON, P.C.

By     **s/s Donald Wilson, Jr.**
Donald Wilson, Jr.
P. O. Box 20527
Phoenix, Arizona  85036
Attorneys for Plaintiffs