LAW OFFICES
BROENING OBERG WOODS & WILSON
PROFESSIONAL CORPORATION
POST OFFICE BOX 20527
PHOENIX, ARIZONA 85036
TELEPHONE: (602) 271-7700
FACSIMILE: (602) 258-7785
Donald Wilson, Jr./Bar No. 005205
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| U-Haul International, Inc., a Nevada corporation; eMove, Inc., a Nevada corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Hire a Helper, LLC, a California limited liability company; Michael Glanz and Amy Glanz, husband and wife; John and Jane Does I - X; ABC Partnerships I – X; XYZ Corporations I – X,<br><br>Defendants. | STATEMENT OF FACTS IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION ORDER<br><br>**(ORAL ARGUMENT REQUESTED)** |

STATEMENT OF FACTS

1.  Defendant Michael Glanz first submitted an application to become an eMove "Moving Helper®" within Plaintiff eMove's "Moving Helper® MarketPlace" at www.emove.com on or about July 20, 2005. He was accepted and activated as an eMove "Moving Helper®" on or about July 21, 2005 and de-activated December 16, 2005. (See ¶ 24 of Plaintiffs' Complaint; See Affidavit of Brian Coxson dated July 3, 2008, Exhibit A, ¶ 7.)

2.  In his application to become an eMove "Moving Helper®", Defendant Michael Glanz agreed to be bound to certain terms and conditions regarding the use of Plaintiff eMove's "Moving Help® MarketPlace." (See Exhibit A, ¶ 8 and Plaintiff's

"Moving Help® – Moving Helper® Agreement", a true and complete copy in effect on or about July 21, 2005, attached hereto as Exhibit B.)

3.   For approximately five months between July 21, 2005 and December 16, 2005, Defendant Michael Glanz was provided 27 opportunities for moving jobs through eMove's "Moving Helper® MarketPlace." Of the 27 jobs offered, Defendant Glanz declined 23 and accepted four.[1] Of the four that were accepted, he completed one. This rate of non-performance is extremely unusual within the industry, establishes opportunity and suggests malevolent use by Defendant Glanz of the "Moving Helper® MarketPlace" site. (See Affidavit of Brian Coxson, Exhibit A, ¶ 9.)

4.   During the period that Defendant Michael Glanz was activated as a "Moving Helper®", he had access, under specific terms and conditions, to Plaintiff eMove's confidential information or trade secrets including, but not limited to, Plaintiff eMove's business practices, object codes, business operations, capabilities, systems, strategies, marketing information, software technologies, processes, procedures, methods and applications belonging to Plaintiff eMove. (See Paragraph 26, of eMove's Moving Helper® Agreement, Exhibit B, Affidavit of Brian Coxson, Exhibit A, ¶ 10 and Sealed Records, Exhibit C to be submitted pursuant to order of the Court on Motion to Seal Records filed simultaneously with Application for Preliminary Injunction.)

5.   Approximately six months after Defendant Glanz' deactivation as a "Moving Helper®" on December 16, 2005, Defendant Hire a Helper, L.L.C. was incorporated under the laws of the State of California on or about July 25, 2006. (See Exhibit A, ¶ 11 and ¶ 26 of Plaintiffs' Complaint).

6.   Defendant Hire a Helper, LLC went live on the internet at www.HireAHelper.com in approximately July, 2007. (See Exhibit A, ¶ 12 and ¶ 26 of

---

[1] Of the four that were accepted, three were cancelled by either the customer or Glanz. Affidavit of Brian Coxson, Exhibit A.

- 2 -

1  Plaintiffs' Complaint.)

2      7.    On or about May 5, 2007, approximately two months before going live with www.hireahelper.com, Defendant Michael Glanz posted a blog on the internet at http://blog.hireahelper.com/2007/05/05/how-bad-design-increases-business/.  (See Exhibit A, ¶ 13; also see print out attached as Exhibit D).  In this blog, Defendant Michael Glanz praises the web page design created by eMove.  According to Defendant Glanz, he is looking for a web design that will capture, convert and retain customers

    8.    Plaintiffs own and/or are the exclusive licensees of the marks "Moving Help®" and "Moving Helper®". The creation and/or first publication of Plaintiff eMove's website on or about January 1, 2004, subsequent update versions in August, 2005 and the continuous use and/or registration of Plaintiffs' service marks, trade names, trade dress, designs, architecture, structure, sequence, organization, and user interface and function and use of other intellectual property belonging to Plaintiffs occurred prior to Defendants' first use of these marks, terms, concepts, expressions and designs in approximately July, 2007.   (See Exhibit A, ¶ 14  and ¶ 14 of Plaintiffs' Complaint.)

    9.    Defendant Michael Glanz' use of eMove's "Moving Help® MarketPlace" website and agreement as a "Moving Helper®" to the terms and conditions set forth in the Moving Help®  - Moving Helper® Agreement on or about July 21, 2005 occurred prior to Defendant Glanz' incorporation of Defendant Hire a Helper, L.L.C. on or about July 25, 2006.  (See Exhibit A, ¶ 15 and ¶ 25 of Plaintiffs' Complaint.)

    10.    Defendant Michael Glanz' use of eMove's "Moving Help® MarketPlace" website and agreement as a "Moving Helper®" to the terms and conditions set forth in the Moving Help® - Moving Helper® Agreement on or about July 21, 2005 occurred prior to Defendant Hire a Helper's first use of these terms, concepts and designs in its website on or about July, 2007.  (See Exhibit A, ¶ 16 and ¶ 25 of Plaintiffs' Complaint.)

COPYRIGHT ARCHITECTURE AND DESIGN; TRADE DRESS; UNFAIR COMPETITION; PLAINTIFFS' DIRIVITIVE WORK

<u>The "Moving Help® MarketPlace" and Hire a Helper's Moving Help Websites Compared</u>

<u>eMove's Website</u>

11.     Plaintiff eMove's "Moving Help®MarketPlace" site at movinghelp.emove.com went live January 1, 2004.  This website functions as a neutral venue and digital clearinghouse for connection between persons who wish to act as service providers (also known as "Moving Helpers®" and customers.  Plaintiff eMove and its "Moving Help® MarketPlace" site provides the customer with the names, prices and customer reviews of persons who have signed up as "Moving Helpers®."  The "Moving Helper®" selected by the customer provides moving services to the customer.  Services providers sign up within Plaintiff eMove's "Moving Help® MarketPlace" and agree to act as "Moving Helpers®."   (See Exhibit A, ¶ 17 and ¶¶ 16, 17, 20 of Plaintiffs' Complaint. See also 2005 emove website printout, Exhibit E**.**

<u>The Design & Architecture of "Moving Help® MarketPlace" Website</u>

12.     Entering the eMove website, the user is given a selection of products and services  including moving trucks and supplies, storage and moving assistance.  Selecting the "Moving Help®" link brings the user to the web page designed for locating moving assistance.  (1-2-3 Search, Connect, Move).  The consumer enters the date(s) and locations of his move by zip code and clicks on "Find Helpers."  A list of "Moving Helpers®", together with their addresses, hourly rates and customer reviews appears.  The consumer makes his selection and the Moving Helper® is contacted.  The selected Moving Helper® is required to make contact with the consumer within 24 hours. *(*See Exhibit A, ¶ 18 and Exhibit E.

13.     Each link within the eMove website provides additional links for the

"Home Page", "Frequently Asked Questions" and "Cancellations and Refunds."  Click on the "Frequently Asked Questions" and areas of interest appear including "General Questions", "Filling Out an Order," "About Moving Helpers®" and "Payments, Changes and Cancellations".   Some of these questions include:

> ***How does Moving Help work?***
>
> ***1.     The customer chooses Moving Helpers by comparing prices and other customers' reviews and places a request for help.***
>
> ***2.     You have 24 hours to accept the work.  Once you accept the lead, the customer is charged and you are "pre-paid" for the work!***
>
> ***3.     You complete the work.  Contact the customer, work out the details and get the job done.  The customer will then give you the payment code.***
>
> ***4.     You get paid.  Come back to the Moving Help Website, enter the payment code and get paid immediately.***

See and compare printout of eMove's Moving Help® Marketplace at https://movinghelp.emove.com/sp/signup_default.aspx, and Exhibit E with Get Started as a Helper at http://www.hireahelper.com/signup and printout attached as Exhibit F.[2] *(*See also Affidavit of Brian Coxson, Exhibit A, ¶ 19.)

      14.     Plaintiff eMove's website markets a 1-2-3 step - fast and easy method for utilizing Plaintiff eMove's services.  This 1-2-3 step process is an effective confluence of three elements: character depictions of the step by step process, a step numbering sequence and narrative.   The "first" step is to "search" and "select" a "Moving Helper®" illustrated by a character depicting a person sitting at a computer. (See www.emove.com/movinghelp, 2005 website printout, Exhibit E). The "second" step is to request help and "get an answer within 24 hours."   During this connection with the

---

[2] Hire a Helper website as copied from eMove and as it existed on or about 11/16/07 is marked as Exhibit F1 and most recent version dated 7/8/08 is marked as Exhibit F2 and is collectively referred to as Exhibit F.

- 5 -

"Moving Helper®", it is explained that the customer and "Moving Helper®" will "discuss the details" of the job.  This second step is illustrated by two characters depicted talking on the telephone.  The "third" step is completion of the work and instructions to provide the "Moving Helper®" a preauthorized payment code which will then be used by the "Moving Helper®" to redeem payment from eMove.  (See www.emove.com/movinghelp 2005 website printout, Exhibit E and Affidavit of Brian Coxson, Exhibit A, ¶ 20.)

Defendant Hire a Helper's Website

15. Defendant Hire a Helper's website www.hireahelper.com went live in July, 2007.  It also functions as a neutral venue and clearinghouse for connection between persons who wish to act as service providers (also called "Helpers" or "Moving Helpers") and customers. (See www.hireahelper.com,  Exhibit F and Affidavit of Brian Coxson, Exhibit A, ¶ 21.)

16. Like the eMove website, Defendant Hire a Helper's "Moving Help" site gives the customer the names, prices and customer reviews of persons signed up as moving "Helpers."  The "Moving Helper" selected by the customer provides moving services to the customer.  Defendant Hire a Helper's "Moving Help" link invites service providers to sign up to provide "Moving Help" and act as a "moving helper". (See and compare 2005 www.emove.com/movinghelp  with www.hireahelper.com/moving-help and printouts attached as Exhibits E & F.)  This is identical to eMove's site.  (See Affidavit of Brian Coxson, Exhibit A, ¶ 22.)

17. Defendant Hire a Helper's "Hire a Helper" website also contains a sublink entitled "Moving Help".  (See www.hireahelper.com/moving-help, Exhibit F and Affidavit of Brian Coxson, Exhibit A, ¶ 23.)

18. Entering the Hire a Helper "Moving Help" site,  the user is given a selection of products and services  including "moving help", cleaning help, lawn help and

day labor help. This page illustrates the same 1-2-3 step process (1-2-3 Search, Contact, Pay) utilized by eMove. Clicking on to the "Moving Help" link within Hire a Helper brings the user to the web page designed for locating moving assistance. (1-2-3 Search, Contact, Pay). The consumer enters the date(s) and locations of his move by zip code. As with the eMove site, a list of "moving helpers", together with their addresses, hourly rates and customer reviews appears. As with the eMove site, the consumer makes his selection and the "Moving Helper" is contacted. The selected moving helper is required to make contact with the consumer within 24 hours. *(*See Affidavit of Brian Coxson, Exhibit A, ¶ 24.)

19. Defendant Hire a Helper's website at the "Moving Helper" link is virtually identical in architecture, design and dress. (See www.hireahelper.com/moving-help and attached print outs marked as Exhibit F.) Like the eMove site, the www.hireahelper.com "Moving Helper" link is characterized by the same "1-2-3" step design ("Search, Compare, Save"/"Search, Contact, Pay*")*. The "first" step ("search") is illustrated by a person sitting at a computer "searching" for and "selecting" the helper. The "second" step ("contact") is illustrated as the contact connection. Like the eMove site, the customer is told that once he selects the "moving helper", he will make contact within 24 hours to discuss the details of the job. The "third" step ("pay") is providing the "moving helper" with the pre-authorized payment code. The customer is directed to give the mover the pre-authorized payment code which will then authorize the release of funds to the mover. See Affidavit of Brian Coxson, Exhibit A, ¶ 25 and www.hireahelper.com/moving-help and attached printouts marked as Exhibit F.)

20. Just like eMove's section entitled "How Does It Work?", Hire a Helper asks and answers the same questions:

**How does it work?**

1. Customers Search for Helpers: Customers

- 7 -

          compare Helper rankings and select customers' reviews.

          2.     Customer Requests Job: You will receive an e-mail to alert you of a job request.

          3.     Customer Pays You With an Authorization Code: The customer will give you an authorization code when the job is complete.

          4.     Get Paid:  Enter your authorization code and HireAHelper will direct deposit the funds (minus 15% HireAHelper service charge) into your bank account. You also have the option to receive a check in the mail if you prefer.

See and compare eMove's Moving Help® Marketplace at https://movinghelp.emove.com/sp/signup_default.aspx and 2005 website printouts with Get Started as a Helper at http://www.hireahelper.com/signup and printouts at Exhibit F. (See also Affidavit of Brian Coxson, Exhibit A, ¶ 26.)

     21.     Copying eMove's organization and design, Hire a Helper also has a link for "Frequently Asked Questions." See and compare www.emove.com/pop_faq.aspx, www.emove.com/sp/signup_default.aspx and printouts at Exhibit E, with www.hireahelper.com/faqs and www.hireahelper.com/signup and printouts at Exhibit F.

The following questions are examples of eMove's "frequently asked questions" garnered by eMove after years of business interaction with the customer and questions "developed" by Hire a Helper after accessing eMove's website:

| eMove | Hire A Helper |
|---|---|
| **About Moving Helpers.** | |
| **Who is a Moving Helper?** | Who are Helpers? |
| **Placing your Moving Helper® order.** | How do I place an order? |
| **What if I do not hear from the Moving Helper after my order is placed?** | What if the Helper accepts my order, but does not show up? |

| **What happens if a Moving Helper damages my goods during the move?** | What do I do if a Helper damages my property during a job? |
|---|---|
| **Are Moving Helpers bonded or insured?** | Are Helpers bonded and/or insured? |
| **Payments, charges and cancellations** | |
| **What is a Payment code?** | What is an authorization code? |
| **What if I misplace or lose the Payment code?** | What if I lose or misplace the authorization code? |
| **How do I make changes to my Moving Help order?** | How do I make changes to my job order? |
| **How do I cancel my Moving Help order?** | Can I cancel my order after it's been accepted? |

See and compare eMove's Moving Help® Marketplace at https://movinghelp.emove.com/sp/signup_default.aspx with Get Started as a Helper at http://www.hireahelper.com/signup.  (See also printouts at Exhibits E and F.)

The questions asked (and even the answers provided) are virtually identical. Defendants may have moved eMove's words and sections of its work within the Hire a Helper website, but the organization, structure and design are so strikingly similar that once a user has navigated one site, he can predict both the organization and content of the competitor's site. *(*See Affidavit of Brian Coxson, Exhibit A, ¶ 27.)

See also and compare:

**How does Moving Help® work?**

    **1.**   **The customer chooses Moving Helpers by comparing prices and other customers' reviews and places a request for help.**

    **2.**   **You have 24 hours to accept the work.  Once you accept the lead, the customer is charged and you are "pre-paid" for the work!**

    **3.**   **You complete the work.  Contact the customer, work out the details and get the job done.  The customer will then give you the payment code.**

> **4.    You get paid.  Come back to the Moving Help Website, enter the payment code and get paid immediately.**

How does it work?

> 1.    Customers Search for Helpers: Customers compare Helper rankings and select customers' reviews.
>
> 2.    Customer Requests Job: You will receive an e-mail to alert you of a job request.
>
> 3.    Customer Pays You With an Authorization Code: The customer will give you an authorization code when the job is complete.
>
> 4.    Get Paid:  Enter your authorization code and HireAHelper will direct deposit the funds (minus 15% HireAHelper service charge) into your bank account.  You also have the option to receive a check in the mail if you prefer.

See eMove's Moving Help® Marketplace at

https://movinghelp.emove.com/sp/signup_default.aspx with Get Started as a Helper at

http://www.hireahelper.com/signup.  (See also printouts at Exhibits E and F.)

TRADENAME INFRINGEMENT & UNFAIR COMPETITION
Facts Relevant to Defendants' Use of e-Move® Trademarks "Moving Help®" and "Moving Helper®"

22.    Plaintiffs U-Haul International and eMove's trade marks and/or other registered marks and names including "Moving Help®", "Moving Helper®", and the "Moving Help® MarketPlace" are service marks used in commercial sales and advertising of Plaintiff eMove's services.  (See ¶ 23 of Plaintiffs' Complaint.)  One or more of these trademarks have been used by Plaintiff eMove to distinguish itself from the services and products of others since at least 2002.   The trademark "Moving Help®" was first used in commerce by Plaintiff eMove beginning on May 3, 2002 and filed and registered by Plaintiff U-Haul International on November 16, 2004.  (See ¶ 11of Plaintiffs' Complaint.)  The trademark "Moving Helper®" was first used in commerce by

1  Plaintiff eMove beginning on January 1, 2004 and filed and registered by Plaintiff U-Haul International on October 19, 2005 and October 30, 2007. (See ¶ 12 of Plaintiffs' Complaint;) *(See also Affidavit of Brian Coxson, Exhibit A, ¶ 28.)*

23. Defendant Hire a Helper's website and sublink entitled "Moving Help", advertises the sale of its services for "Moving Help", and instructs the customer on how to search for local "Moving Help". The Hire a Helper website advertises that after selection, the "Moving Helper" will contact the customer to discuss the details of the move. Defendant Hire a Helper uses the registered marks "Moving Help" and/or "Moving Helper" repeatedly in the context of the advertising and/or sale of its services located at www.hireahelper.com. *(See Affidavit of Brian Coxson, Exhibit A, ¶ 29.)*

24. As explained earlier, Plaintiff eMove is the first company to utilize the concept of an internet based neutral venue for connecting or matching consumers looking for moving assistance ("Moving Help®") with independent contractors who are looking for moving customers and wish to act as "Moving Helpers®". The eMove website and "Moving Help®MarketPlace" within eMove's website contain buried or hidden codes utilizing the trademarks "Moving Help®" and "Moving Helper®". These codes are also known as "metatags" or the "HTML" codes. Metatags or HTML codes are not visible to the web user. However, they are used and therefore identified by search engines in determining which sites correspond to keywords used or entered by a web user. *(See Affidavit of Brian Coxson, Exhibit A, ¶ 30.)*

25. Defendant Hire a Helper, LLC's website at www.hireahelper.com also contains similar metatags or html codes not readily visible to the consumer. Defendant Hire a Helper, LLC's metatags or html code contain, among others, the keyword "Moving Help®". (See Defendant Hire a Helper, LLC's website at www.hireahelper.com and printouts at Exhibit F.) This means that if a consumer enters the search word "Moving Help®" intending to reach eMove's "Moving Help®

MarketPlace", search engines will pull up not only eMove's "Moving Help® MarketPlace" within the Moving Help® subdomain, but will also identify and locate Defendant Hire a Helper's website at www.hireahelper.com.  *(See Affidavit of Brian Coxson, Exhibit A, ¶ 31 and Exhibit F.)*

BREACH OF CONTRACT; TRADE SECRETS
AND UNFAIR COMPETITION

Facts Relevant to Defendants Glanz' Breach of Contract and
Theft of Trade Secrets

26.     Defendant Michael Glanz first submitted an application to become an eMove "Moving Helper®" within  Plaintiff eMove's "Moving Helper® MarketPlace" at www.emove.com on or about July 20, 2005.  Defendant Glanz was accepted and activated as an eMove "Moving Helper®" on or about July 21, 2005.  (See ¶ 24 of Plaintiffs' Complaint and Affidavit of Brian Coxson, Exhibit A, ¶ 7.)

27.     In his application to become an eMove "Moving Helper®", Defendant Michael Glanz agreed to be bound to certain terms and conditions regarding the use of Plaintiff eMove's "Moving Help®  MarketPlace."  (See Plaintiff's "Moving Help® – Moving Helper®  Agreement", a true and complete copy in effect on or about July 21, 2005, attached as Exhibit B.)  Defendant Glanz' obligations and Plaintiffs' proprietary interests and rights in the eMove "Moving Help® MarketPlace" website, including the names, marks and other intellectual property contained in the eMove website, are expressly set forth therein. *(See Affidavit of Brian Coxson, Exhibit A, ¶ 8.)*

28.     The Contract states in pertinent part:

> **Confidentiality/Non-Disclosure:**  As a result of the performance of this Agreement and whether due to any intentional or negligent act or omission, We may disclose to You or You may otherwise learn of or discover, Our documents, business practices, object code, source code, management styles, day-to-day business operations,

- 12 -

capabilities, systems, current and future strategies, marketing information, financial information, software technologies, processes, procedures, methods and applications, or other aspects of Our business ("Our Information").  **You hereby agree and acknowledge that any and all of our information is confidential and shall be Our sole and exclusive intellectual property and proprietary information.  You agree to use Our Information only for the specific purposes as allowed by the performance of this Agreement.  Any disclosure of Our Information to a third party specifically including a direct competitor is strictly prohibited and will be vigorously challenged in a court of law.**  All obligations contained herein shall survive the termination of this Agreement.

Furthermore, **You acknowledge that Our Information is proprietary, confidential and extremely valuable to Us, and that We would be materially damaged by Your disclosure of Our Information.**  You acknowledge and agree that monetary damages provide an insufficient remedy for the breach of this confidentiality obligation, and that We shall be entitled to injunctive relief.

**Protection of Intellectual Property Content:**  The Moving Help® MarketPlace contains copyrighted material, inventions, know how, potential patentable business method material, design logos, phrases, names, logos or HTML Code ("Intellectual Property Content") all of which, unless otherwise indicated and/or provided pursuant to a third party license, are **Our sole property and We retain all appurtenant rights, interests and title thereto.  We also claim ownership rights under the copyright and trademark laws with regard to the "look", "feel", "appearance" and "graphic function" of this Moving Help® MarketPlace including but not limited to its color combinations, sound, layouts and designs.  You agree and acknowledge that Your use of this Moving Help® MarketPlace does not confer upon You any license or permission to use Our (or any third party's) Intellectual Property Content.  You shall not reproduce, modify, display, sell or distribute the Intellectual Property Content, or use it in any other way for public or commercial purpose.**  All other trademarks, service marks and copyrights are held by their rightful owners.

**Trademark and Domain Name Protection:**  The Moving Help® MarketPlace contains trademarks, tradenames, trade dress, service marks, domain names or other indicia or ownership (collectively the "Marks") owned or licensed for use by Us.  Unless otherwise agreed to in an Addendum to this Agreement, You agree that no right, property, license, permission or interest of any kind in or to the Marks is or is

- 13 -

|   |   |
|---|---|
| 1 | intended to be given or transferred to or acquired by You pursuant to the execution, performance or non-performance of this Agreement or any part thereof. **You shall in no way contest or deny the validity of, Our right of title to or license of use for, the Marks, and You shall not encourage or assist others directly or indirectly to do so, during the lifetime of this Agreement and thereafter.** You shall not utilize the Marks in any manner that would diminish their value or harm their reputation. **You shall not use or register any domain name that is identical to or similar to any of the Marks.** |

(Emphasis added.  See ¶ 25 of Plaintiffs' Complaint and Moving Helper® Agreement Exhibit B hereto.)

EVIDENCE OF INTENT TO INFRINGE,
MISAPPROPRIATE AND ENGAGE IN UNFAIR COMPETITION

Facts Relevant to Defendants Glanz and Hire a Helper's
Intent to Infringe and/or Misappropriate

29.  As set forth above, Defendant Michael Glanz first submitted an application to become an eMove "Moving Helper®" within Plaintiff eMove's "Moving Helper® MarketPlace" at www.emove.com on or about July 20, 2005.  Defendant Glanz was accepted and activated as an eMove "Moving Helper" on or about July 21, 2005.  He was de-activated as a "Moving Helper®" on December 16, 2005.  Id.  For approximately five months between July 21, 2005 and December 16, 2005, Defendant Michael Glanz accessed eMove's website and was contacted by customers through eMove's "Moving Helper® MarketPlace" for at least 27 jobs.  He declined 23 and accepted four.  Defendant Michael Glanz incorporated Defendant Hire a Helper and/or Defendant Hire a Helper was incorporated on or about July 25, 2006.  In July, 2007, Defendant Hire a Helper went live at www.hireahelper.com. (See Affidavit of Brian Coxson, Exhibit A, ¶¶ 7, 9, 11 & 12.)  Two months earlier, Defendant Glanz posted a blog on the internet praising e-Move's website design.  According to Defendant Glanz, he was looking for a website design that would capture, convert and retain customers.  (See

- 14 -

1 | http://blog.hireahelper.com/2007/05/05/how-bad-design-increases-business/; See also
2 | print out attached hereto as Exhibit D and Affidavit of Brian Coxson, Exhibit A, ¶ 13.)

RESPECTFULLY SUBMITTED this 10th day of July, 2008.

BROENING OBERG WOODS & WILSON, P.C.

By      **s/s Donald Wilson, Jr.**
Donald Wilson, Jr.
P. O. Box 20527
Phoenix, Arizona  85036
Attorneys for Plaintiff