# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U-HAUL INTERNATIONAL, INC., a Nevada corporation; eMOVE, INC., a Nevada corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>HIRE A HELPER, LLC, a California limited liability company; MICHAEL GLANZ; AMY GLANZ; JANE DOES I-X; JOHN DOES I-X; ABC PARTNERSHIPS I-X; and XYZ CORPORATIONS I-X,<br><br>    Defendants.<br>_____<br>HIRE A HELPER, LLC, a California limited liability company,<br><br>    Counterclaimant,<br><br>vs.<br><br>U-HAUL INTERNATIONAL, INC., a Nevada corporation; and ROES 1 through 25, inclusive,<br><br>    Counterdefendants. | **CASE NO. 08-CV-01801-H (NLS)**<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION & DISMISSING CASE** |

On July 10, 2008, Plaintiffs U-Haul International, Inc. ("U-Haul") and eMove, Inc. ("eMove") filed a complaint against Defendants Michael Glanz ("Glanz") and Hire A Helper,

LLC ("Hire A Helper") for trademark infringement, copyright infringement, breach of contract, contributory and vicarious liability for copyright infringement, Arizona common law unfair competition, and misappropriation of trade secrets in violation of Arizona law.  (Doc. No. 1, Compl.)  On March 12, 2009, Defendants filed a motion to compel arbitration and dismiss or alternatively stay the action pending arbitration.  (Doc. No. 65.)  Plaintiffs filed a response in opposition on March 30, 2009.  (Doc. Nos. 71-72.)  Defendants filed a reply on April 6, 2009.  (Doc. No. 73.)

The Court held a hearing on the matter on April 13, 2009. Boris Zelkind and Maria Stout appeared on behalf of Plaintiffs. Duane Scott Horning appeared on behalf of Defendants. For the reasons set forth below, the Court grants Defendants' motion to compel arbitration and dismisses the case.

**Background**

Plaintiff U-Haul claims ownership and intellectual property rights in certain alleged trademarks, copyright, and trade secrets.  (Compl.¶ 10.)  Plaintiff eMove, a wholly-owned subsidiary of U-Haul, is the exclusive licensee of U-Haul's alleged trademarks "Moving Help" and "Moving Helper" and of the copyrighted material published at the website "Moving Help Marketplace."  (Id. ¶ 10.)  eMove is an online marketplace for moving, self storage products and services.  (Id. ¶¶ 2, 13.)  eMove's website, which contains the "Moving Help Marketplace" site, functions as a neutral venue for connections between persons who wish to act as service providers (also known as "Moving Helpers") and customers.  (Id. ¶¶ 16, 17.)  The site provides customers with the names, prices, and customer reviews of registered "Moving Helpers," who may then be selected by the customer to provide a moving service.  (Id. ¶¶ 17, 18.)

Plaintiffs allege that Defendant Glanz submitted an application within eMove's website to become an eMove "Moving Helper" and was subsequently accepted and activated as an eMove "Moving Helper" on July 21, 2005.  (Id. ¶ 24.)  As part of his application to become a registered "Moving Helper," Glanz agreed to be bound by certain terms and conditions regarding the use of eMove's "Moving Help Marketplace" that were contained in the "Moving Help Service Provider Agreement" (the "Agreement").  (Id. ¶ 25; Ex. D.)  The Agreement

b

contained covenants that Glanz would not violate Plaintiffs' alleged intellectual property rights in trade secrets, trademarks, and copyrights. (Id. ¶ 42; Ex. D ¶¶ 26-28.) Plaintiffs allege that on July 25, 2006, Glanz incorporated Defendant Hire A Helper, which went live on the internet in July 2007 and assists customers in the selection of providers of casual labor for household, gardening, and moving projects. (Id. ¶ 26.)

As a result of this alleged conduct, Plaintiffs brought this action on July 10, 2008 in the District of Arizona alleging that Defendants infringed upon Plaintiffs' intellectual property rights and that Glanz breached the contractual covenants by utilizing on Hire A Helper's website similar works, marks, names, business method material, architecture designs, design logos, and phrases belonging to Plaintiffs. (Id. ¶ 28; Doc. No. 39.) Plaintiffs' complaint seeks injunctive relief on all causes of action and damages. The case was ordered transferred to this Court on motion of the Defendants on September 22, 2008. (Doc. No. 39.) On October 3, 2008, Defendants filed an answer and counterclaim against U-Haul for cancellation of its trademark registrations for "Moving Help" and "Moving Helper" due to their generic and descriptive nature. (Doc. No. 42.)

On March 12, 2009, Defendants filed the present motion to compel arbitration and dismiss or alternatively to stay the action pending arbitration. (Doc. No. 65.) The Agreement between Glanz and eMove contains an arbitration clause, which provides in relevant part:

> Except as set forth later in this Section, any dispute, legal controversy, legal action or legal claim arising out of or relating to Our MarketPlace or this Agreement shall be settled by mandatory, binding arbitration. . . . The arbitrator shall at no time award injunctive relief. . . . The arbitration shall be conducted in Phoenix, Arizona . . . You expressly consent that this arbitration clause does not in any manner prohibit or preclude Us [eMove] from seeking to obtain an injunction relating to, among other things, Our MarketPlace or Our intellectual property in an appropriate Arizona court of law.

(Compl. Ex. D ¶34.) The Agreement also contains a provision on "Governing Law" that provides, "[i]n the event that injunctive relief is sought by Us, the courts of Maricopa County,

Arizona and/or the United States District Court for the District of Arizona (Phoenix Division) shall have exclusive jurisdiction over any dispute arising under this Agreement. All other disputes shall be resolved in accordance with the mandatory, binding arbitration provision in this Agreement." (Id. ¶ 48.)  Plaintiffs oppose any arbitration. (Doc. No. 71.)

## Discussion

### I.     Motion to Compel Arbitration – Legal Standard

The Federal Arbitration Act ("FAA") provides that any arbitration agreement "evidencing a transaction involving commerce" shall be "valid, irrevocable, and enforceable." 9 U.S.C. § 2. When one party to such an agreement refuses to arbitrate a dispute, the other party may petition a federal court to compel arbitration. Id. at § 4. If the court determines that (1) a valid agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue, the court must enforce the agreement and compel arbitration. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA reflects Congress' intent to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 22 (1983). Whether an issue is "referable to arbitration" is determined with a "healthy regard for the federal policy favoring arbitration ... [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." Cone, 460 U.S. at 24–25. "[A]n arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." Cone, 460 U.S. at 20 (referring to a possible indemnitor).

### A.  Scope of Arbitration Agreement

No party disputes the validity of the arbitration clause as to eMove and Glanz or that the transaction between eMove and Glanz was one involving commerce. Plaintiffs do contest whether the clause covers the dispute at issue due to their request for injunctive relief. A district court must apply ordinary principals of state contract law to determine whether the parties have agreed to arbitrate a particular dispute. First Options of Chicago, Inc. v. Kaplan,

514 U.S. 938, 944 (1995). Under California or Arizona law, "the whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code §1641; Hamberlin v. Townsend, 76 Ariz. 191, 196 (1953). "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code §1643; Hamberlin, 76 Ariz. at 196. "[A]pparently conflicting provisions must be reconciled, rather than nullify any, if reconciliation can be effected by any reasonable interpretation." Id.; Cal. Civ. Code § 1652. "Where a contract is ambiguous it will be construed most strongly against the party preparing it." Hamberlin, 76 Ariz. at 196; Cal. Civ. Code § 1654.

The Court concludes that Plaintiffs' claims are subject to the mandatory arbitration clause. The arbitration clause states, "Except as set forth later in this Section, any dispute, legal controversy, legal action or legal claim arising out of or relating to Our MarketPlace or this Agreement shall be settled by mandatory, binding arbitration." (Compl. Ex. D ¶ 34.) Plaintiffs' complaint against Defendants arises out of and relates to eMove's website (i.e. "Our MarketPlace") and the Agreement. Plaintiffs' allegations of infringement of their intellectual property rights stem from Glanz accessing that intellectual property when he was a "Moving Helper" and using it to start a similar web-based company, Hire A Helper. In order to become a "Moving Helper" on eMove's website, Glanz had to agree to be bound by the "Moving Helper Service Provider Agreement," which contained the arbitration clause. Plaintiffs' allegations of breach of contract against Glanz relate directly to the Agreement, as the complaint quotes the Agreement's covenants concerning use of eMove's intellectual property and alleges Glanz breached those covenants. (Compl. ¶¶ 41-48.) Defendant Hire A Helper's counterclaims also arise out of and relate to eMove's website, as they seek cancellation of trademarks used on the website. Thus, from the plain language of the arbitration clause, the dispute in this case arises out of and relates to eMove's website and the Agreement.

Plaintiffs assert that because they have sought injunctive relief as a remedy in the complaint, that this action is excluded from the arbitration clause. In cases where the

arbitration clause is broad, "'[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" AT&T Tech., Inc. v. Comm. Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 584-85 (1960)).  Section 34 of the Agreement entitled "Arbitration" states, "The arbitrator shall at no time award injunctive relief." (Id. Ex. D ¶ 34.)  It also states, "You expressly consent that this arbitration clause does not in any manner prohibit or preclude Us [eMove] from seeking to obtain an injunction relating to, among other things, Our MarketPlace or Our intellectual property in an appropriate Arizona court of law." (Id. Ex. D ¶ 34.)  The Court concludes that the arbitration clause does not exclude arbitration of any claim arising out of or related to eMove's website or the Agreement simply because eMove seeks injunctive relief on that claim.  The arbitration clause prohibits an arbitrator from awarding injunctive relief, but not from considering the underlying claim upon which injunctive relief is sought. It would be unnecessary to state that an arbitrator may not award injunctive relief if no claim including a request for injunctive relief could be in front of an arbitrator.  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Cone, 460 U.S. at 24–25.  The arbitration clause merely excludes a form of relief that may be awarded during arbitration, and permits eMove to seek such injunctive relief from an appropriate court. The arbitration clause also states that an arbitration award shall not include an award of punitive damages. (Compl. Ex. D ¶ 34.)  Thus, the arbitration clause exempts certain categories of relief an arbitrator may award, but does not exclude entire disputes from arbitration merely because a party seeks that category of relief.

Section 48 of the Agreement concerning "Governing Law" does not change this analysis, as it states, "[i]n the event that injunctive relief is sought by Us, the courts of Maricopa County, Arizona and/or the United States District Court for the District of Arizona (Phoenix Division) shall have exclusive jurisdiction over any dispute arising under this Agreement." (Id. Ex. D ¶ 48.)  This section of the Agreement concerns the choice of law of Arizona law and jurisdiction.  It does not concern the scope of arbitration.  This section

governs the jurisdiction for any dispute over whether injunctive relief should issue, not the entirety of the underlying claim. Interpreting section 48 differently would render it inconsistent with section 34 concerning the scope of arbitration, as the arbitration clause only excepts out a form of relief an arbitrator may award and does not state that any claim that seeks injunctive relief as a form of remedy is excluded from arbitration. "[A]pparently conflicting provisions must be reconciled, rather than nullify any, if reconciliation can be effected by any reasonable interpretation." Hamberlin, 76 Ariz. at 196; Cal. Civ. Code § 1652. Accordingly, the Court concludes that Plaintiffs' and Defendants' claims are within the scope of the arbitration agreement.

Plaintiffs at the motion hearing argued for the first time that Section 26 of the Agreement entitled "Confidentiality/Non-disclosure" excepts out disputes concerning intellectual property from the arbitration agreement. This provision of the Agreement concerns eMove's confidential business information and states, "[a]ny disclosure of Our Information to a third party specifically including a direct competitor is strictly prohibited and will be vigorously challenged in a court of law." (Compl., Ex. D ¶ 26.) It goes on to state that, "[y]ou acknowledge and agree that monetary damages provide an insufficient remedy for the breach of this confidentiality agreement, and that We shall be entitled to injunctive relief." (Id.) This section read in conjunction with the rest of the Agreement does not change the broad nature of the arbitration clause to except out any dispute concerning intellectual property and does not state that eMove cannot arbitrate disputes concerning the breach of the confidentiality provision. Furthermore, section 26 concerns confidential business information and does not cover the protection of other intellectual property such as copyrighted material or trademarks, which are both at issue in this case. The Agreement contains specific provisions concerning the protection of intellectual property content and trademark and domain name and neither of those provisions state that any dispute concerning the protection of such intellectual property shall only be heard in a court of law. (Id. ¶¶ 27-28.) If eMove had wanted to except out any dispute concerning intellectual property of any kind from arbitration it could have done so explicitly in the arbitration clause, but did not.

**B. Ability to Bind Non-signatories to Arbitration**

Plaintiffs contend that (1) Hire A Helper does not have standing to compel either eMove or U-Haul to arbitrate because it was not a party to the Agreement and (2) Defendants do not have standing to bind U-Haul to arbitration because U-Haul was not a party to the Agreement. (Doc. No. 71.) "Arbitration, however favored by the courts and Congress, is a contractual right, and may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." Lorber Indus. of Cal. v. Los Angeles Printworks Corp., 803 F.2d 523, 525 (9th Cir. 1986). However, the Ninth Circuit has suggested that "a third party beneficiary or an agent of one of the parties to the contract may have standing to compel arbitration." Britton v. Co-op Banking Group, 916 F.2d 1405, 1413 (9th Cir. 1990).

Plaintiffs' claims against Hire A Helper are intertwined with their claims against Glanz. Hire A Helper benefitted from Glanz's agreement with eMove because the protected information Glanz allegedly obtained under the Moving Helper Agreement resulted in reduced design and development costs for its website, as well as faster time to market. Plaintiffs' claims against Hire A Helper are substantially interdependent with the conduct of the signatory, Glanz, and unless Hire A Helper is allowed to arbitrate, arbitration between Plaintiffs and Glanz would be meaningless and against the federal policy favoring arbitration. Plaintiffs' claims against Hire A Helper are inherently bound up with the claims against Glanz and arbitration with all parties will avoid duplicative litigation. Accordingly, the Court concludes that Hire A Helper should be a party to the arbitration.

U-Haul is the parent company of its wholly owned subsidiary eMove. U-Haul allegedly owns the registered copyrighted material known as the "eMove" website and owns the registered trademarks "Moving Help" and "Moving Helper." (Compl. ¶ 10.) U-Haul is named as a Plaintiff on all causes of action in the complaint, including the breach of contract claim against Glanz. (Id. ¶¶ 41-48.) U-Haul directly benefitted from the Agreement, as the covenants in the contract concerned protection of its intellectual property rights. Plaintiffs allege that "Glanz's breach of contract has caused Plaintiffs material damage and irreparable

1  harm." (Id. ¶ 48.) Thus U-Haul seeks to benefit on one hand from the Agreement and on the
2  other resists the application of one of the contractual provisions. U-Haul cannot have it both
3  ways. Compelling U-Haul to arbitrate its claims against Defendants that are inherently
4  intertwined with eMove's claims against Defendants is in accordance with the federal policy
5  favoring arbitration and avoids duplicative litigation.

**C. Waiver of Right to Arbitrate**

Plaintiffs assert that Defendants have waived their right to arbitrate. A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts. The party arguing waiver of arbitration bears a heavy burden of proof. Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986); Van Ness Townhouses v. Mar Indus. Corp., 862 F.2d 754, 758 (9th Cir. 1988).

Plaintiffs argue that Defendants waived their right to arbitrate by not asserting the right when the case was before the District of Arizona. (Doc. No. 71 at 12-13.) Defendants do not dispute that they had knowledge of an existing right to compel arbitration when the case was in front of the District of Arizona. Plaintiffs contend that Defendants' failure to move to compel arbitration in the District of Arizona and moving to transfer the case to this Court are acts inconsistent with the right to compel arbitration because the arbitration clause provides for arbitration to take place in Phoenix, Arizona. The Court concludes that these are not inconsistent acts. Defendants contested jurisdiction and the enforceability of the Agreement's forum selection clause in Arizona. Under the "doctrine of separability," an arbitration provision is considered to be an independent and separate agreement between the parties to the underlying contract. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402-03 (1967). Therefore, Defendants' arguments as to the enforceability of the Agreement in general do not waive their rights to compel arbitration under the arbitration clause. Furthermore, Defendants asserted in their answer that, "Defendants do not waive their rights, if any, to compel arbitration." (Doc. No. 42 ¶ 84.) Plaintiffs do not point to any prejudice to Plaintiffs

from Defendants' alleged inconsistent acts of contesting jurisdiction and enforceability of the Agreement's forum selection clause and subsequently seeking to enforce the Agreement's arbitration clause.  The Court concludes that Plaintiffs have not met their heavy burden of demonstrating waiver.

**D.  Location of Arbitration**

Section 4 of the FAA provides that, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.  The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."  Id.  The arbitration clause provides that, "[t]he arbitration shall be conducted in Phoenix, Arizona."  (Compl. Ex. D. 34.)  However, because the FAA limits the Court's ability to compel arbitration within the district in which the petition to compel is filed, arbitration is to take place within the Southern District of California.  See Textile Unlimited, Inc. v. A..BMH and Co., Inc., 240 F.3d 781, 784-85 (9th Cir. 2001) ("[B]y its terms, § 4 only confines the arbitration to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur."); Continental Grain Co. v. Dant & Russell, 118 F.2d 967, 969 (9th Cir. 1941) (ordering arbitration to take place within the District of Oregon where the agreement provided that arbitration was to take place in New York, as Congress had power to limit the right of arbitration).

**E.  Dismissal or Stay of Action**

Defendants request that the Court dismiss the action or alternatively issue a stay pending completion of arbitration.  Section 3 of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such

arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  However, when all of a plaintiff's claims are required to be submitted to arbitration, a dismissal of those claims in within the authority of the court.  <u>Sparling v. Hoffman Const. Co., Inc.</u>, 864 F.2d 635, 638 (9th Cir. 1988).  Accordingly, the Court grants Defendants' request to dismiss the action as all claims are subject to arbitration.

### **Conclusion**

For the reasons set forth above, the Court GRANTS Defendants' motion to compel arbitration in the Southern District of California of all claims and counterclaims and dismisses the case without prejudice to seek to reopen the case to enforce any arbitration award.[1]

**IT IS SO ORDERED.**

DATED: April 13, 2009

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[1] If there is any request for injunctive relief resulting from any arbitration award, the Court may address the request at that time.