1                UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3

4  U-HAUL INTERNATIONAL, INC.,   )  Case No. 08CV1801-H(NLS)
   et al.,                       )
5                                )  San Diego, California
            Plaintiffs,          )
6                                )  Monday,
   vs.                           )  April 13, 2009
7                                )  10:30 a.m.
   HIRE A HELPER, LLC, et al.,   )
8                                )
            Defendants.          )
9  _____  )

10               TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE MARILYN L. HUFF
11                UNITED STATES DISTRICT JUDGE

12  APPEARANCES:

13  For the Plaintiffs:            BORIS ZELKIND, ESQ.
                                   Knobbe, Martens, Olson
14                                  & Bear, LLP
                                   550 West C Street, Suite 1200
15                                 San Diego, California 92101
                                   (619) 525-8325
16
    For the Defendants:            DUANE SCOTT HORNING, ESQ.
17                                 California Business Law
                                    Group
18                                 750 B Street, Suite 1620
                                   San Diego, California 92101
19                                 (619) 325-1555

20  Transcript Ordered by:         KNOBBE MARTENS, ESQ.

21  Court Recorder:                Lynnette Lawrence
                                   United States District Court
22                                 940 Front Street
                                   San Diego, California 92122
23

24
    Proceedings recorded by digital sound recording; transcript
25  produced by transcription service.

ii

1  Transcriber:                    Holly Martens
2                                  Echo Reporting, Inc.
                                   6336 Greenwich Drive, Suite B
3                                  San Diego, California 92122
                                   (858) 453-7590
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

1   <u>SAN DIEGO, CALIFORNIA  MONDAY, APRIL 13, 2009  10:30 A.M.</u>

2                              --oOo--

3        (Call to order of the Court.)

4             THE CLERK:  Number nine on calendar, 08CV1801, U-

5   Haul International, Inc. versus Hire a Helper, LLC, for

6   motion hearing.

7             THE COURT:  Good morning.

8             MR. HORNING:  Good morning, your Honor.

9             THE COURT:  State your appearances.

10            MR. HORNING:  Duane Horning for the Defendants,

11  Hire a Helper, LLC, and Michael Glands (phonetic).  And my

12  client, Mr. Glands, is present with me this morning.

13            THE COURT:  Thank you.

14            MR. ZELKIND:  Boris Zelkind of Knobbe, Martens, on

15  behalf of Plaintiffs, U-Haul, and with me is Maria Stout.

16            THE COURT:  Thank you.  Good morning.

17            The Court wanted you to come in and argue this

18  case.  Typically, the law favors arbitrations, particularly

19  in these types of settings.  This case has a little unusual

20  procedural history, since it came over from, I think,

21  Arizona.  And so there are a couple of issues.

22            One is whether the arbitration clause actually

23  applies to these -- to this particular Defendant.  And two,

24  whether it would be appropriate for the Court to enforce

25  arbitration.

2

1        There's a choice of law clause in the document to
2   apply the laws of the State of Arizona.  Then there's also a
3   clause about injunctive relief.
4        And as I understand it, correct me if I'm wrong,
5   originally there was an application, or some type of request
6   in the District of Arizona for preliminary injunction, but
7   then nothing happened on that, or the court denied it.
8        MR. HORNING:  The first part was correct, your
9   Honor.  The complaint was filed along with a motion for
10  preliminary injunction by the Plaintiffs.  And we opposed,
11  and there was a reply brief filed.
12        The court set a hearing that was initially set to
13  be considered both that proceeding and a motion that we, the
14  Defendants, had brought, to challenge jurisdiction and
15  venue.  And so we had about an hour-and-a-half oral argument
16  where the court first considered the jurisdiction and venue
17  issues, and took those matters under submission.  And we
18  just ran out of time for that day, and so the court set
19  another hearing later on for us to come back in the
20  preliminary injunction.   And in the meantime, the court
21  ruled on our motion for injunction -- I'm sorry, for venue
22  and jurisdiction, and transferred the case here.
23        So, the Arizona court never actually ruled on, or
24  had oral argument on the motion for preliminary injunction.
25  So, the entire case was filed here on about October 3rd.

3

1 And the rules are a little bit different in Arizona than

2 they are in the Southern District of California.  Here, as

3 the Court, of course, well knows, it's up to the parties to

4 request a hearing date, and the Plaintiffs never requested

5 that their motion for preliminary injunction, which they

6 filed in Arizona in July, be set for hearing here.

7            So, I've inquired several times about that, and

8 have been told that the Plaintiffs do not intend to set that

9 preliminary injunction motion for hearing.  So, it's,

10 essentially, abandoned, even though it was fully briefed.

11           THE COURT:  Is it -- are you withdrawing it

12 without prejudice?

13           MR. ZELKIND:  Yes, your Honor.  And I didn't have

14 the benefit of attending --

15           THE COURT:  It didn't actually come over.  The

16 case came, but because here we have a hearing, it's not

17 pending, although in my view, if you asked for it before and

18 you wanted to have it -- the Court rule upon it, the Court

19 could.

20           So, are you withdrawing that request at this time?

21           MR. ZELKIND:  Yeah, without prejudice, your Honor.

22 We -- I was not retained to represent U-Haul until the case

23 was transferred here.  So, I did not have the benefit of

24 either preparing those papers or arguing in Arizona.  So,

25 yeah, we would prefer to withdraw that motion.

4

1          THE COURT:  All right.  Now, on the one thing is,

2 it is correct that -- both sides can be seated -- on a

3 request for injunctive relief, that would be something that

4 would not be the subject of arbitration.  And the Court

5 would permit U-Haul, within the next 30 days, to decide

6 whether you wish to reapply for injunctive relief.

7          But, the Court's tentative here is actually to --

8 well, let me -- I think we should have it heard.  So, on the

9 motion to compel arbitration there's an issue as to whether

10 U-Haul is within the scope of the arbitration clause.

11          So, who wishes to be heard first?

12          MR. HORNING:  Your Honor, may I be heard?

13          THE COURT:  You may.  It's your motion, is that

14 right?

15          MR. HORNING:  It is, your Honor.  Thank you.

16          Your Honor, that is one of the essential issues,

17 and we would submit that in this case that the arbitration

18 clause absolutely does apply, and encompasses all of the

19 claims and all of the parties of this case.

20          I think it would be hard to find a broader

21 arbitration clause than the one here, which says, "All

22 claims related to or arising out of the agreement, or the

23 website," it's a very all encompassing clause.

24          THE COURT:  I agree on that.

25          MR. HORNING:  And so there is a carve-out in that

5

1  sentence that says, "Except as provided in this section,"

2  and that's Section 37, and that's a very long paragraph.

3  We've quoted the entirety in our brief.  There's nothing in

4  that Section 37 that carves out any claims at all.

5          The closest it comes is in about the middle of

6  that paragraph, there's one sentence which says, "The

7  arbitrator shall not award injunctive relief," which we

8  interpret, your Honor, and the rules, I think, of contract

9  interpretation would support this, that by the very fact

10  that there's a sentence that says, "the arbitrator shall not

11  award injunctive relief," means a claim where injunctive

12  relief is possible, or even requested, could be -- and the

13  contract anticipates that it would be in front of the

14  arbitrator.  But, then it just constrains the arbitrator's

15  authority from not actually granting that relief.

16          So, the --

17          THE COURT:  Where is it that arbitrators can't do

18  injunctive relief, because they don't have the power?  How

19  do you compel?  It's by contempt, and what contempt powers

20  do they have?  None.

21          MR. HORNING:  That's, I think, true, your Honor.

22  I think in a different case that an arbitrator theoretically

23  could award injunctive relief, and then they would have to

24  be confirmed as a judgment, and then it would be enforced as

25  contempt.

6

1          THE COURT:  I see.

2          MR. HORNING:  But, that hasn't arisen here,

3     because the contract that the Plaintiffs drafted said that

4     everything gets arbitrated.  Then it limits what the

5     arbitrator's authority is.  One of them is injunctive

6     relief.  It limits some other issues, which are not relevant

7     here, like no punitive damages, and some other things.

8          And so, it anticipates that where there is a claim

9     for injunctive relief, it will, in fact -- the claim itself

10    will be presented to the arbitrator on the merits.  Was

11    there a breach of contract?  Was there an infringement of a

12    property right, for example.

13         It's just the relief, as distinguished from the

14    claim, that is outside the arbitration.  And there there are

15    many cases, your Honor, that specifically anticipate this

16    very circumstance.  Perhaps because of the issue the Court

17    raised where if a party is to get an injunction, in order

18    for it to be effective it has to be by an actual judge

19    anyway.  So, I think it's fairly common to carve out the

20    injunctive relief from the arbitration clause.

21         And there are many cases with specifically address

22    that and say, fine, go ahead and have your arbitration, or

23    in the meantime, if a party wants to, to preserve the status

24    quo, can bring an injunctive motion before the Court.  That

25    doesn't change what gets arbitrated, that just, basically,

7

1   creates two parallel tracks.

2          THE COURT:  Now, on trademark, is that -- is that

3   permissible for an arbitrator to rule on that?

4          MR. HORNING:  Yes.

5          THE COURT:  Has that been done?  Is that common?

6          MR. HORNING:  Absolutely, your Honor.  Well,

7   "common," I can't speak to how common or uncommon, but it's

8   legally permissible.

9          We've briefed that issue, your Honor, and there's

10  no dispute on that.  There was no opposition to that.  It

11  was in our moving papers.

12         THE COURT:  Can you address then the scope of the

13  arbitration agreement as it applies to U-Haul?

14         MR. HORNING:  Yes, your Honor.  Again, there's no

15  dispute on this point.  We've had two pages of briefing that

16  U-Haul is subject to the arbitration clause.  The opposition

17  was all of five lines, without a citation to any authority.

18         So, the law is that when there are non-

19  signatories, whose claims are closely intertwined with those

20  of the signatories, that non-parties are commonly brought in

21  to be subject to the arbitration clause.

22         So here, U-Haul has set up a wholly owned

23  subsidiary, E-Move (phonetic), created the contract where E-

24  Move is the party, assigned and licensed all of it's

25  property rights to E-Move, and is completely controlling and

*Echo Reporting, Inc.*

8

1 directing E-Move.  There's really only one unity of interest

2 among the -- between the Plaintiffs, U-Haul and E-Move.

3         They have one set of lawyers, one set of papers,

4 one set of -- one appearance at every proceeding.  And I

5 think the argument could be made, actually, U-Haul has no

6 standing in this case at all anyway, because it's assigned

7 all of it's rights to it's subsidiary, E-Move.  That issue

8 hasn't become relevant so far.

9         But, I think it makes the point that the claims

10 between U-Haul and E-Move are completely intertwined.

11         Your Honor, in our moving brief we cited, at one

12 point, all of the places that I could find in the complaint

13 where it refers to the Plaintiffs pursuing their claims

14 jointly.  And we cited all those page, line references.  And

15 there's dozens of times, your Honor, where the Plaintiffs

16 refer to their own claims as their claims, plural,

17 Plaintiffs'.

18         In fact, the third claim in this case is

19 specifically for breach of the subject contract.  And even

20 there, the Plaintiffs jointly claim relief under that

21 contract, even though U-Haul is not a party.

22         So, U-Haul is seeking to enforce intellectual

23 property rights that derive from the contract, and enforce

24 the contract as a Plaintiff, as a named Plaintiff directly,

25 and through it's subsidiary.

9

1         Your Honor, the other point I would make is the

2   cases hold that if a party could avoid an arbitration clause

3   just by naming non-parties to the lawsuit, that would really

4   abrogate and nullify the effectiveness of an arbitration

5   clause.

6         THE COURT:  All right.  Let me hear from the

7   Plaintiffs.

8         MR. ZELKIND:  Good morning, your Honor.

9         THE COURT:  Good morning.

10        MR. ZELKIND:  Actually, I have some bench books

11  that I prepared.  I don't know if you --

12        THE COURT:  You may submit them.

13        MR. ZELKIND:  Your Honor, I would first like to

14  back up for a second and talk about the scope of the

15  arbitration clause in this particular agreement, because I

16  think that what Defendants have been arguing is that we

17  should only be looking at paragraph 34 of the agreement,

18  which is entitled, "Arbitration."

19        But, what is important to note about this

20  agreement is paragraph 44.  It was attached several places.

21  It was attached as Exhibit A in the opening brief.  But,

22  paragraph 44 specifically states that the headings here are

23  purely contained as a convenience, and should not be

24  interpreted as helping to provide meaning to any of the

25  paragraphs therein.

10

1        So, we have to look at the agreement as a whole,

2   which Defendants do acknowledge, that you need to look at

3   the entire agreement.  And by the way, the reference to

4   paragraph 44 is contained in the bench book, I believe it is

5   tab three.

6        THE COURT:  It is.

7        MR. ZELKIND:  And if we look at the entirety of

8   the agreement, we see that there's several paragraphs that

9   specifically indicate that the agreement was contemplated to

10  litigate issues of intellectual property disputes, and to

11  arbitrate the rest of the disputes that may arise from this

12  agreement.

13       And what's important to note is, what is the

14  nature of this agreement?  This is a service provision

15  agreement.  This is not intellectual property license.

16       So, this agreement governed the way that a service

17  provider that joined the E-Move marketplace would operate

18  within this marketplace.  And so there are various

19  provisions here that do not give rise to the situation where

20  monetary relief would be insufficient.

21       For instance, if you look at paragraph seven

22  through 13, there is countless different disputes that may

23  arise dealing with the way fees are distributed.  Whether

24  the appropriate services were provided to the customer

25  seeking the labor services.  Whether the appropriate

11

1 accounts, debit accounts were used.

2          But, if we look specifically to the kind of

3 disputes that were envisioned to be litigated, we see

4 paragraph -- and if we turn to tab two -- there are three

5 specific paragraphs that are relevant.

6          Paragraph 26, and in tab two I'm summarizing, and

7 further on there is the actual language.  But, paragraph two

8 specifically points out that monetary damages are

9 insufficient misuse of intellectual property.

10          Paragraph 48, which is entitled, "Governing law."

11 But, it specifically says that if a party seeks injunctive

12 relief in a court of law, or seeks injunctive relief, courts

13 of law have exclusive jurisdiction, and it doesn't

14 differentiate between preliminary injunctions or permanent

15 injunctions.  Plaintiffs have not abandoned their request

16 for injunctive relief.

17          And finally, paragraph 34, which is labeled,

18 "Arbitration," specifically references the fact that seeking

19 an injunction --

20          THE COURT:  So, you're saying that while you've

21 withdrawn your request for preliminary injunctive relief,

22 you're seeking permanent injunctive relief?

23          MR. ZELKIND:  Absolutely.  That is throughout the

24 complaint.

25          THE COURT:  So, say there's no request for

12

1  preliminary injunction, if monetary damages are sufficient,

2  then at the end of the case then the Court would not need to

3  do injunctive relief?  So, why couldn't it go to arbitration

4  first, and then on any confirmation of any award, if

5  permanent injunction is also requested within one year of

6  any dismissal here, it would come back to this Court.  So,

7  why couldn't that --

8          MR. ZELKIND:  Because ultimately the -- because

9  ultimately the question of arbitration is one of contract.

10 And we have to look at what did the parties intend, and what

11 did the parties agree to?

12         The parties here agreed to litigate issues

13 involving intellectual property disputes.  Like I said, if

14 we look at specific language of paragraph 26, which is tab

15 four.  I've highlighted certain language, this is actual

16 excerpts from the paragraph.

17         Paragraph 26 describes that intellectual -- that

18 our information includes the sole and exclusive intellectual

19 property and proprietary information.  The parties

20 specifically contracted that any disclosure of this

21 information -- and this is, by the way, where the breach of

22 contract claim arises -- is the disclosure -- not because

23 fees weren't collected properly or fees weren't distributed

24 properly, but it was specifically because intellectual

25 property was alleged to have been taken and misused by the

13

1 Defendants.

2        The parties specifically agreed that such

3 disclosure or misuse of intellectual property will be

4 challenged in a court of law.  And specifically, the parties

5 agreed that monetary damages provide an insufficient remedy

6 for breach of confidential obligation for misuse of

7 intellectual property.

8        THE COURT:  All right.  What causes of action or

9 claims do you have in your complaint?

10        MR. ZELKIND:  These are all intellectual property

11 based.  There is a trademark misappropriation -- sorry,

12 there's trademark infringement, there's copyright

13 infringement, there's trade secret misappropriation.

14        THE COURT:  But, copyright, so any disclosure --

15 how does the copyright come in here?

16        MR. ZELKIND:  Well, if we look at paragraph 26, it

17 specifically describes that intellectual property is a part

18 of the definition of what is our information.  And the

19 following provisions, paragraph 27, 28, specifically address

20 trademark infringement or trademark rights, and then

21 copyrights, because this is an electronic marketplace, and

22 so E-Move has asserted copyrights in the various components

23 of -- and the compilation of components of it's websites.

24        And paragraph 48, which is in tab five, which is

25 specifically styled governing law, I believe, says that in

14

1 the event that injunctive relief is sought by E-Move, courts

2 shall have exclusive jurisdiction --

3         THE COURT:  What courts?  This is where I said

4 that it's kind of interesting, because you're saying the

5 Court has to have jurisdiction -- has to do it, not an

6 arbitrator.  But, the choice of law is the Court of Arizona

7 shall have exclusive jurisdiction over any dispute arising

8 under this agreement.  And Arizona bounced it to us.

9         MR. ZELKIND:  Well, Plaintiffs brought the case

10 there.  Plaintiffs attempted to enforce this -- enforce the

11 specific choice of law provision.

12         THE COURT:  Can I retransfer it back?  I think

13 it's pretty clear.  Injunctive relief is supposed to be in

14 Arizona.

15         MR. ZELKIND:  I agree, your Honor.  I wish I had a

16 chance to have argued that motion.

17         But, nonetheless, I think that while it talks

18 about which specific courts, it does specifically talk

19 about, and show the intent of the parties, that injunctive

20 relief, and this doesn't again parse out preliminary versus

21 permanent injunctive relief, is to be determined in a court

22 of law.  All other disputes shall be resolved by binding

23 arbitration.

24         And like I said, there are a lot of disputes that

25 can arise under this service agreement that don't involve

15

1  intellectual property rights.  That can be sufficiently

2  remedied by a damages award.  And I have highlighted certain

3  of the paragraphs, I think it's in tab seven, that we talk

4  about that.

5           THE COURT:  Now, the District Court in Arizona

6  felt that there was insufficient personal jurisdiction over

7  the Defendant or what was for venue?

8           MR. ZELKIND:  I believe that it was a transfer of

9  venue for convenience.

10           THE COURT:  "For convenience?"

11           MR. HORNING:  Your Honor, there were three named

12  Defendants.  As to one Defendant, Amy Glands, the Court

13  ruled that there was lack of personal jurisdiction.  As to

14  Defendant Michael Glands, the Court ruled against us on that

15  point, and ruled there was personal jurisdiction, and then

16  on Hire a Helper reserved.  And then went to the issue of

17  convenience, and ended up transferring the case here based

18  on convenience because of third party witnesses, and also

19  because of the relative size of the parties, the Defendants

20  being here in the Southern District, transferred the matter

21  here.  And then coming back to the jurisdiction question of

22  Hire a Helper, that issue was then moot.  The case having

23  been transferred to the Southern District and did not reach

24  the jurisdiction issue over Hire a Helper.

25           MR. ZELKIND:  And Defendants say that we shouldn't

16

1  be looking at paragraph 48, because they say the subject, by

2  it's title and terms, does not deal with the scope of

3  arbitration.

4        But, if we're looking at the agreement as a whole,

5  and we're trying to analyze whether -- what are the

6  arbitration terms of this agreement as a whole, there's no

7  question that paragraph 48 specifically addresses the scope

8  of arbitration.  It says that all other disputes shall be

9  resolved in accordance with a mandatory binding arbitration

10 provision.

11       So, we can't dismiss this clause merely because it

12 has a specific title, which while -- even if there wasn't

13 paragraph 44, which says -- the parties specifically state

14 that the titles aren't to be used for limiting the scope of

15 the terms.  But, even without that provision, it's still

16 very clear that on it's face paragraph 48 deals with the

17 scope of the arbitration clause.

18       And paragraph 34 specifically says -- and again, I

19 think this is really critical because there are two aspects

20 of this arbitration provision that weren't discussed by the

21 Defendants.

22       One is that the clause opens, except as set forth

23 later in this section.  So, it's not a broad, unlimited

24 statement as the Plaintiffs said when they first got up

25 here, that any dispute, legal controversy or legal action.

17

1 No.  It says, "Except as set forth later in this section any

2 dispute legal controversy."  So, clearly, there's a carve

3 out here.

4        If we look at what the parties intended, the

5 parties intended for intellectual property disputes, or

6 other disputes where monetary damages are an insufficient

7 remedy, that those need to be addressed in a court of law.

8 While those disputes that -- the more run of the mill issues

9 that arise out of a service provider operating and

10 performing within the E-Move marketplace, those kinds of

11 issues can be dealt with in arbitration.  They can decide

12 whether appropriate fees were distributed, whether fees were

13 collected, whether appropriate representations were made to

14 the customers.  Dealing with the customers and disputes

15 arising out of dealing with the customers.  Those kind of

16 issues should be arbitrated on disagreement.

17        The claims that are involved in this case only

18 relate to this agreement in the sense that the relationship

19 between the parties happened, and particularly we're talking

20 about E-Move and the Glands, because of this agreement.

21        The Glands gained access to various intellectual

22 property as a result of signing up to participate as a labor

23 service provider.

24        The other issue that I want to hit on that I think

25 is very important, is that Hire a Helper, the other co-

18

1    Defendant, should not be allowed to enforce or compel

2    arbitration when they were not only not a party to the

3    agreement, if the Court does decide that the agreement

4    requires arbitration, but they didn't even exist as a

5    company at the time that Glands' signed the agreement, and

6    at the time that Glands' operated under the agreement.

7            In fact, when transferring the case here to the

8    Southern District, Hire a Helper specifically argued that

9    they weren't bound by the agreement, and --

10           THE COURT:  And that's how they got out of the

11   choice of law?

12           MR. ZELKIND:  That's right.  And so they're

13   judicially estopped because the court actually relied on

14   that argument.  The court distinguished Glands' situation

15   from Hire a Helper's situation.

16           So, it's both disingenuous and actually

17   inappropriate under the estoppel principles for Hire a

18   Helper to argue.  There they're arguing that they are not

19   bound by the agreement, but here saying that they are

20   beneficiaries or agents of the agreement, when they're

21   already taken that position and, obviously, the court relied

22   on that in a different jurisdiction.

23           THE COURT:  Thank you.  Any brief response?

24           MR. HORNING:  Yes, your Honor, if I may.  I think

25   what would be particularly helpful in this case is to

19

1  specifically consider the case of <u>Remey</u>, which we've cited

2  in our brief, and I have a copy of that case, if I may, with

3  a portion of it highlighted.  If I may offer that, your

4  Honor?

5           THE COURT:  You may.

6           MR. HORNING:  Your Honor, the context of <u>Remey</u> is

7  a very similar situation as here, where a plaintiff filed in

8  court, a defendant moved to compel arbitration, and the

9  plaintiff said, "no, we want to get injunctive relief."  And

10 that's a carve out.  And so that was addressed by the court,

11 and the relevant and most important part of it is on the

12 page that I've tabbed that begins on the Court record at

13 page -- the reported decision 217 to 218, it's on page six

14 of the document we have in front of us now.

15          The court addressed a very important point in that

16 case, which is very applicable here.  And that is, in

17 interpreting a contract that what a court must do is discern

18 the intent of the parties, taking the contract as a whole.

19 And where there's a -- where one interpretation would result

20 in a conflict within the contract, and another

21 interpretation would not, then the preference is to be given

22 to no conflict, particularly where that leads to

23 arbitration, which is also the preferred interpretation

24 under the contract.

25          THE COURT:  Do I -- well, on <u>Remey</u>, one, it's a

20

1 District Court case, and I often say it's like citing neon

2 law.  And two, it's not even Ninth Circuit.  But, often

3 because these issues arise in the District Court it's at

4 least illustrive of the issues that the Court has to deal

5 with.

6          Do I -- could you address -- obviously, the

7 District Court in Arizona didn't follow the choice of law,

8 so do I infer from that that on the judicial estoppel that

9 the District Court did consider that your client had said

10 that the arbitration clause doesn't apply in transferring it

11 here.

12          MR. HORNING:  Your Honor, I did participate in the

13 proceedings in Arizona.  And what's represented is not

14 correct.  First of all, the choice of law clause did not

15 arise.  The choice of venue clause did arise.  That was

16 considered by the court, and the court did find it was a

17 factor as to Defendant Glands, and was a factor that weighed

18 in favor of keeping the case in Arizona.  There were many

19 other factors that over weighed that factor, and the court

20 cited law, which is correct, that a choice of venue clause

21 is not controlling, it's one factor to be considered, among

22 others.  And the court weighed multiple factors and

23 determined there were other more important factors, like

24 third party witnesses.

25          The court ruled that the choice of venue provision

21

1  did not apply to Hire a Helper because Hire a Helper was not

2  a party to the contract, did not exist at the time the

3  contract was formed.

4          But, your Honor, what the Defendants have not --

5  and Plaintiffs have not addressed at all in their papers or

6  today, is the doctrine of separability.  So, under the

7  doctrine of separability, specifically in arbitration

8  context, parties are allowed to contest, resist, object to

9  the contract, that's enforceability, it's validity to

10 everything else, except for arbitration, which is separate.

11         And so, your Honor, the parties had the latitude

12 to take that very position to -- and we do contest many

13 aspects of this contract as Defendants.  But, as to the

14 arbitration clause, the authorities hold that separate.

15         What the Plaintiffs do is the very opposite, has

16 no authority for it.  The Plaintiffs want to enforce the

17 entirety of the contract as to both Plaintiffs and both

18 Defendants on all contract terms, except arbitration.

19 There's no authority for that proposition.  But, there is

20 authority for the reverse, which is proper to say, wait, as

21 to arbitration we're going to carve just the arbitration

22 out.

23         Your Honor, the other point I'd like to address.

24 Several times my esteemed colleague said that we wanted to

25 ignore Section 48.  Not the case.  We've never taken that

22

1  position.  To the contrary, our position is, the entirety of

2  the contract needs to be looked at, Section 34 and Section

3  48 both, as well as all other provisions.  We're not relying

4  on headings, we're looking at the text in those paragraphs,

5  in those sections.  And in Section 34 it is a broad clause,

6  except as contained in this section, Section 34.  There is

7  no carve out in Section 34.

8          And so Plaintiffs' interpretation would set up a

9  conflict between Section 48 and Section 34.  And the rules

10 of contract interpretation hold, no, when there's a

11 potential conflict the Court must construe them both

12 together and find the intent of the parties.

13         THE COURT:  All right.  Thank you.  I'm going to

14 submit the matter.  Thank you for coming here.  This could

15 potentially be a perfect law school examination on civil

16 procedure on a number of different issues.  Thank you.

17         MR. ZELKIND:  Thank you, your Honor.

18         THE COURT:  I'll consider your positions and then

19 issue a ruling.

20         MR. ZELKIND:  Thank you, your Honor.

21         MR. HORNING:  Thank you, your Honor.

22         THE COURT:  Thank you.  Your argument was

23 excellent on both sides.

24     (Proceedings concluded.)

25

23

1          I certify that the foregoing is a correct

2  transcript from the digital sound recording of the

3  proceedings in the above-entitled matter.

4

5
   /s/Holly Martens_____            4/27/09
6  Transcriber                       Date

7  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

8
   /s/L.L. Francisco_____
9  President, Echo Reporting, Inc.
   Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*